UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARY CATHERINE CLEARY,       Case No. 2:22-cv-13133-MFL-JJCG
f/k/a MARY CATHERINE JACKMAN,   HON. MATTHEW F. LEITMAN
                                MAG. JUD. JONATHAN J.C. GREY

      Plaintiff,

vs.

MOBILE PHYSICIANS NETWORK OF MICHIGAN, P.C.
d/b/a MOBILE CARE GROUP; JAMES L. WALLACE; JOSEPH
WALLACE; and HEALTHDRIVE CORPORATION; jointly and severally,

      Defendants.
_____

| | |
|---|---|
| GARY T. MIOTKE (P41813) | GREGORY M. MEIHN (P38939) |
| Attorney for Plaintiffs | DANIEL J. WOODCOCK (P35603) |
| 6828 Park Avenue | GORDON REES SCULLY MANSUKHANI |
| Allen Park, MI 48101 | Attorneys for Defs.,Mobile P. Netw., |
| (313)-388-4809 | James Wallace, & Joseph Wallace only |
| gmiotke@miotkelawoffice.com | 37000 Woodward Avenue, Suite 225 |
| | Bloomfield Hills, MI 48034 |
| | (313)-426-9815, Fax : (313)-406-7373 |
| | gmeihn@grsm.com |
| | dwoodcock@grsm.com |

_____

AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

NOW COMES the Plaintiff, by and through her attorney, and pursuant to

FRCP 15(a)(1)(A), she states for her Amended Complaint that:

JURISDICTION, PARTIES, VENUE

1. This action arises out of the Plaintiff's employment.

2. Count I is a claim for age discrimination and retaliation pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 USC 621 et seq.

3. This Court has jurisdiction over Count I pursuant to 29 USC 626(c).

4. Count II is a claim to enforce rights under the Family and Medical Leave Act of 1993 ("FMLA"), 29 USC 2601 et seq.

5.  This Court has jurisdiction over Count II pursuant to 29 USC 2617(a)(2).

6.  In addition, Count I has been properly filed pursuant to 29 USC 626(d) in that (a) Plaintiff has waited more than 60 days after filing a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") before commencing this civil action and/or (b) Plaintiff has refiled this claim in this Amended Complaint within 90 days after Plaintiff received a "right-to-sue" letter from the EEOC.

7.  This Court has jurisdiction over Count III, Count IV, Count V, and Count VI pursuant to the doctrine of supplemental jurisdiction, 28 USC 1367.

8. Count VII is a claim for race discrimination pursuant to Title VII, 42 USC 2000e et seq.

9. This Court has jurisdiction over Count VII pursuant to 42 USC 2000e-5 and 28 USC 1331, 1343.

10. Count VIII is a claim for violation of the Americans with Disabilities Act ("ADA"), 42 USC 12101 et seq.

11.  This Court has jurisdiction over Count VIII pursuant to 42 USC 12117, 42 USC 2000e-5, and/or 28 USC 1331.

12. Count IX is a claim for retaliation pursuant in part to Title VII, 42 2000e et seq. and in part pursuant to the ADA, 42 USC 12203(a).

13. This Court has jurisdiction over Count IX pursuant to 42 USC 2000e-5 42 USC 12117, and 28 USC 1331, 1343.

14. Further, Counts VII, VIII and IX have been properly filed by Plaintiff in this Amended Complaint within 90 days after Plaintiff received a "right-to-sue" letter from the EEOC and Plaintiff did not include these claims as part of this civil action until she had received the "right-to-sue" letter from the EEOC.

15.  Plaintiff is a resident of the City of Wyandotte, County of Wayne, State of Michigan.

16.  For all times material to this Amended Complaint, Defendant, MOBILE PHYSICIANS NETWORK OF MICHIGAN, P.C. d/b/a MOBILE CARE GROUP ("MCG") was a Michigan corporation doing business within the State of Michigan and in particular within the Eastern District of Michigan, Southern Division

3

through its offices located in the City of Southfield, County of Oakland, State of Michigan.

17.  Defendant, HEALTHDRIVE CORPORATION ("HD") is a foreign corporation with substantial contacts within the State of Michigan and in particular within the Eastern District of Michigan, Southern Division.

18. Specifically, HD is the successor to MCG having purchased it (on information and belief) in mid-2021 after Plaintiff had filed her Charge of Discrimination with the EEOC.

19. After the purchase, there was a substantial continuity of business operations by HD vis-à-vis MCG in that HD used substantially the same workforce and supervisory personnel, has had the same jobs under the same or similar working conditions, has had the same methods of providing the same services and/or product to its customers, and has the ability to provide the Plaintiff relief.

20.  Defendant, JAMES L. WALLACE ("Jim") is a resident of the City of Troy, County of Oakland, State of Michigan which exists within the Eastern District of Michigan, Southern Division.

21. For all times material to this Amended Complaint, Jim acted as the Operations Manager (that is, overall office supervisor) for MCG's office in Southfield, Michigan.

22. On information and belief, Defendant, JOSEPH WALLACE ("Joe") is a resident of a municipality in northern Ohio.

23. For all times material to this Amended Complaint, Joe acted as MCG's President, Secretary and Director such that he had substantial contacts within the Eastern District of Michigan, Southern Division.

24. In addition, Jim and Joe are brothers who were (on information belief) involved in all of the Defendants' adverse employment actions against the Plaintiff as alleged herein.

25. The events giving rise to this case arose within the Eastern District of Michigan, Southern Division.

<u>BACKGROUND FACTS</u>

26. Plaintiff began her employment with MCG at its Southfield office on January 13, 2016 in an Administrative Support position.

27. From March 2016 until the mass layoff of employees at this office on or about March 22, 2020 due to the Pandemic, Plaintiff was in an Administrative Support Podiatry position.

28. Plaintiff is a white woman who is 61 years old.  Her date of birth is February 27, 1962.

29. Plaintiff has the following disabilities: (a) congestive heart failure, (b) high blood pressure, (c) hypoglycemia, and (d) underlying symptoms that she has from a stroke that she had sometime during the period starting April 2019 and ending January 24, 2020.

30. Plaintiff also has a record or history of these disabilities.

31. Further, based in part on some of the information stated herein, it is evident that the Defendants perceived, believed, or regarded the Plaintiff to have or as having a disability.

32. Plaintiff performed her duties very well and went out of her way to be a valuable employee by learning to do things beyond and above her formal job duties.

33. Among other things, Plaintiff (a) dealt with server problems with MCG's I.T. person and computer support issues starting in or around 2018; (b) went to an insurance website and learned how to verify insurance, and thereafter set up prior authorizations with certain companies for podiatry; (c) would be back-up supervisor Erica's back-up and would confirm scheduling, etc. if Jim and Erica were not present; (d) would also be a back-up for Admissions; (e) was in line to answer the phones and to give verbal consents over the phone; (f) increased the

numbers in her department; and (g) recovered money in other departments which increased the numbers in her department.

34. While Plaintiff was employed by MCG, Plaintiff was hospitalized on several occasions due to her disabilities prior to the layoff in March 2020: (a) In November 2018, she was hospitalized for 8 days due to double pneumonia, RSV, and congestive heart failure. (b) In February 2019, she was hospitalized for the same conditions. (c) In January 2020, she was hospitalized for 8 days since her blood pressure was out of control. During this hospitalization, it was determined that she had a stroke sometime in the previous 9 months.

35. Besides these hospitalizations, Plaintiff also had to take time off at times due to uncontrolled high blood pressure.

36. Jim was aware of Plaintiff's hospitalizations, her time off due to high blood pressure, and her disabilities.

37. Not only did Plaintiff provide information to Jim about these things, but Plaintiff's son also provided such information to Jim when Plaintiff was hospitalized in January 2020 and otherwise.

38. Additionally, in mid-March 2020, Plaintiff applied for FMLA leave to cover her time off due to congestive heart failure and her undiagnosed stroke.

39. Plaintiff submitted this FMLA paperwork to Jim.

40. Yet, Plaintiff learned that Jim never turned in her FMLA paperwork to Human Resources.

41. Thus, Plaintiff was never officially granted or denied FMLA leave retroactively or prospectively.  Instead, she was laid off due to the Pandemic.

42. On or about August 24, 2020, the Defendants recalled another laid off employee named "Laura" instead of Plaintiff to fill the position of Patient Coordinator Optical.

43. Laura was a white female in her late 30's with no known disabilities.

44. In or around the first week of September 2020, the Defendants recalled another laid off employee named "Constance" instead of Plaintiff to fill the position of Administrative Support Podiatry.

45. Constance was a black female in her early 30's with no known disabilities.

46. Plaintiff was qualified to fill both of these positions.

47. Indeed, Constance was recalled to fill *Plaintiff's* position.

48. Furthermore, recalling Laura and Constance before Plaintiff otherwise made no sense.

49. With respect to Laura, she had less than 1 year of seniority to Plaintiff's almost 5 years of seniority. Also, the work she had done was not as relevant to the

Patient Coordinator Optical position as the work the Plaintiff had done. Indeed, the Plaintiff had applied for this position in 2018 since she was qualified for it.

50. With respect to Constance and the Administrative Support Podiatry position, Plaintiff was in the Administrative Support Podiatry position before the layoff. Although she had done some support work for Podiatry before the layoff, Constance had not been in this position. Plus, she only had about 1 year of seniority with the MCG while Plaintiff had about 5 years of seniority with most of it being in this specific position.

51. On September 14, 2020, Plaintiff sent Jim an email asking if she was going to be coming back to work.

52. Among other things, Plaintiff questioned why Laura was put into the position she was recalled to. Plaintiff also specifically asked if "my age, health, [and] my history of being hospitalized" impacted his decision not to recall Plaintiff and instead to recall Laura.

53. Plaintiff's inquiry about whether this action took place due to illegal employment discrimination was protected under federal and Michigan law. For this reason, it is referred to as "Plaintiff's protected email".

54. On or about October 29, 2020, Plaintiff was recalled to work in the Patient Coordinator Audio position.

9

55. On or about December 7, 2020, Jim directed Plaintiff to get tested for COVID-19 due to a fever she had.

56. Thereafter, Plaintiff was quarantined from December 7, 2020 through December 14, 2020.

57. Unfortunately, Plaintiff was also hospitalized from December 15, 2020 through December 19, 2020 due to her blood pressure being very elevated.

58. Thereafter, Plaintiff's physician issued a return to work note stating that Plaintiff would "be able to return to work on 12/29/2020 with no restrictions."

59. As such, Plaintiff was off work from December 15, 2020 until December 29, 2020.

60. On December 29, 2020, Plaintiff returned to work.

61. When she walked into the office, two boxes were sitting next to her desk.

62. After Plaintiff asked if she was being let go, Jim asked her to step into his office to talk.

63. Plaintiff and Jim discussed various things in this conversation; and what follows is not a verbatim summary of the entire conversation.

64. However, some key points are: (a) Jim said he was letting the Plaintiff go. (b) He said he was able to eliminate her position by giving some of her duties

10

to other positions. (c) He also said that this was due to COVID.  (d) He said that Plaintiff did her job correctly and this had nothing to do with her performance.

65. Most importantly, he said that Plaintiff needed to contact the social worker at the hospital and have her help Plaintiff out with getting put on disability because Plaintiff "can't work".  He also noted that Plaintiff had been out sick several times. He punctuated this by stating that Plaintiff needed to be "on disability".

66. For several reasons, Plaintiff disagreed with Jim's assessment that Plaintiff needed to be put on disability. She also said Jim didn't want her there because she had been in the hospital due to her blood pressure being out of control.

67. Jim ignored Plaintiff's statements and said he would carry the boxes out to Plaintiff's car.  And he did so after some other discussion.

68. Two days later, Plaintiff's position was posted as an open position on several job boards by MCG and/or Jim.

69. Jim's statements about Plaintiff's termination evidencing his discriminatory and/or retaliatory intent were *not* isolated.

70. For example, if Plaintiff was off work due to her blood pressure, Jim would make comments that she needed to be at work, she was not doing her job.

71. Jim would do this even though no one else covered Plaintiff's work, she used vacation and/or other time to cover the time she was off, and she would make up her time and get her work caught up when she returned.

72. Notably, even when Plaintiff was hospitalized, she used vacation and/or other time to cover the time she was off.

73. Furthermore, Plaintiff was not the only employee who took time off for health or other personal reasons. For example, other employees spontaneously took time off due to child care and other issues.

74. In or around the end of September or the beginning of October, 2020, Jim and the Plaintiff had another conversation demonstrating that Jim's comments about Plaintiff's termination were *not* isolated evidence of his discriminatory and/or retaliatory intent.

75. This conversation concerned whether the Plaintiff would be returning to work.

76. In this conversation, Jim stated that he needed someone who would be there every day, Plaintiff should take care of her health, and he needed someone consistent. He also said that Constance was that person. Plus, he said that Plaintiff was not consistent due to her health and personal issues with her son.

77. Yet, once again, these statements showed that the Plaintiff was discriminated against due to her disabilities, age, and/or race.  That is, the personal issues with Plaintiff's son had been resolved more than 3 years before this conversation took place and could not be relevant in 2020.

78. Hence, Plaintiff's health and her need for accommodation due to her disabilities was Jim's *real* issue.

79. Thus, the adverse employment actions the Defendants took against the Plaintiff were: (a) the denial in mid-March 2020 of FMLA leave to the Plaintiff to cover her time off due to congestive heart failure and her undiagnosed stroke; (b) the first failure to recall the Plaintiff to work on or around August 24, 2020; (c) the second failure to recall the Plaintiff to work in or around the first week of September 2020; and (d) the Plaintiff's termination on December 29, 2020.

80. Further, the adverse employment actions took place in violation of both federal and Michigan law because of: (a) Plaintiff's disabilities (including her actual disabilities, her record/history of disabilities, and the perception or belief that she had disabilities), (b) Plaintiff's age; (c) Plaintiff's race; (d) retaliation due to Plaintiff's opposition to the discrimination that she experienced; and/or (e) Plaintiff's exercise of rights under the FMLA and/or federal and/or Michigan anti-discrimination laws.

13

## COUNT I: AGE DISCRIMINATION AND RETALIATION IN VIOLATION OF FEDERAL LAW

81. The Plaintiff incorporates paragraphs 1 through 80 above by reference.

82. Plaintiff was discriminated against by the Defendants in the terms and conditions of her employment in significant part due to her age in violation of the ADEA.

83. Specifically, the Defendants took the adverse employment actions against the Plaintiff that are referred to in paragraph 79 above in significant part due to her age.

84. Additionally, the Defendants retaliated against the Plaintiff in violation of the ADEA by terminating her employment as referred to in paragraph 79 above in significant part due to Plaintiff's protected email which constituted an effort to oppose one or more unlawful employment practices or actions.

85. Further, the Defendants' violations of the ADEA were knowing, willful, and/or reckless.

86. As a direct and proximate result, Plaintiff has sustained and will continue to sustain damages including, but not necessarily limited to, the following:

     (a)  Loss of wages and fringe benefits;

     (b)  Loss of pension and/or Social Security benefits;

     (c)  Severe mental anguish and distress;

14

(d)  Embarrassment and humiliation;

(e)  Mental anguish stemming from the outrage she experienced

as a result of the actions against her;

(f)  Fright, shock, and mortification;

(g)  Pain and suffering;

(h)  Damage to reputation;

(i) Punitive damages;

(j) Liquidated damages; and

(k)  Costs and attorney fees.

WHEREFORE, your Plaintiff respectfully requests this Honorable Court to enter a judgment in her favor against the Defendants, jointly and severally, awarding her an amount in excess of Seventy-Five Thousand ($75,000.00) Dollars to which she is entitled for compensatory, exemplary, liquidated, and/or punitive damages; granting her equitable relief as may be necessary; and awarding her costs, interest, and attorney fees so wrongfully incurred.

## COUNT II:  VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT (FMLA)

87. Plaintiff incorporates paragraphs 1 through 86 above by reference.

88. The Plaintiff was an "eligible employee" under the FMLA.

89.  The Defendants were "employers" within the meaning of the FMLA.

90.  Pursuant to the FMLA, Plaintiff was entitled to non-interference with her rights as granted pursuant to the FMLA and to non-retaliation for exercising her rights as granted pursuant to the FMLA.

91. The Plaintiff was entitled to leave under the FMLA and had given notice to the Defendants of her intention to take such a leave.

92. The Plaintiff's request for FMLA leave was an activity protected by the FMLA.

93. The Defendants denied Plaintiff's request for leave by ignoring it and treating it as having never been made.

94. Further, Plaintiff's protected email and/or her taking time off in the past due to her serious health conditions were also in part activities protected by the FMLA.

95. The Defendants knew that the Plaintiff was exercising rights under the FMLA by requesting a leave, taking time off due to her serious health conditions, and/or by sending Plaintiff's protected email.

96.  Yet, the Defendants violated the Plaintiff's FMLA rights by taking the adverse employment actions against the Plaintiff that are referred to in paragraph 79 above in part by interfering with her entitlement to the leave and/or by taking

16

said actions in significant part due to her having engaged in protected activity under the FMLA.

97. Further, the Defendants' violations of the FMLA were knowing, willful, and/or reckless.

98. As a direct and proximate result, Plaintiff has sustained and will continue to sustain damages including, but not necessarily limited to, the following:

      (a)  Loss of wages and fringe benefits;

      (b)  Loss of pension and/or Social Security benefits;

      (c)  Severe mental anguish and distress;

      (d)  Embarrassment and humiliation;

      (e)  Mental anguish stemming from the outrage she experienced as a result of the actions against her;

      (f)  Fright, shock, and mortification;

      (g)  Pain and suffering;

      (h)  Damage to reputation;

      (i) Punitive damages;

      (j) Liquidated damages; and

      (k)  Costs and attorney fees.

WHEREFORE, your Plaintiff respectfully requests this Honorable Court to enter a judgment in her favor against the Defendants, jointly and severally, awarding her an amount in excess of Seventy-Five Thousand ($75,000.00) Dollars to which she is entitled for compensatory, exemplary, liquidated, and/or punitive damages; granting her equitable relief as may be necessary; and awarding her costs, interest, and attorney fees so wrongfully incurred.

### COUNT III:  VIOLATION OF ELLIOTT-LARSEN CIVIL RIGHTS ACT ("ELCRA") –AGE DISCRIMINATION

99.  Plaintiff incorporates paragraphs 1 through 98 above by reference.

100. Each Defendant was an "employer" within the meaning of the ELCRA.

101. Plaintiff was discriminated against by the Defendants in the terms and conditions of her employment in significant part due to her age in violation of the ELCRA.

102. Specifically, the Defendants took the adverse employment actions against the Plaintiff that are referred to in paragraph 79 above in significant part due to her age.

103. As a direct and proximate result, Plaintiff has sustained and will continue to sustain damages including, but not necessarily limited to, the following:

> (a)  Loss of wages and fringe benefits;

18

(b) Loss of pension and/or Social Security benefits;

(c) Severe mental anguish and distress;

(d) Embarrassment and humiliation;

(e) Mental anguish stemming from the outrage she experienced

as a result of the actions against her;

(f) Fright, shock, and mortification;

(g) Pain and suffering;

(h) Damage to reputation;

(i) Punitive damages;

(j) Liquidated damages; and

(k) Costs and attorney fees.

WHEREFORE, your Plaintiff respectfully requests this Honorable Court to enter a judgment in her favor against the Defendants, jointly and severally, awarding her an amount in excess of Seventy-Five Thousand ($75,000.00) Dollars to which she is entitled for compensatory, exemplary, liquidated, and/or punitive damages; granting her equitable relief as may be necessary; and awarding her costs, interest, and attorney fees so wrongfully incurred.

COUNT IV: VIOLATION OF ELLIOTT-LARSEN CIVIL RIGHTS ACT ("ELCRA") –RACE DISCRIMINATION

104. Plaintiff incorporates paragraphs 1 through 103 above by reference.

105. Each Defendant was an "employer" within the meaning of the ELCRA.

106. Plaintiff was discriminated against by the Defendants in the terms and conditions of her employment in significant part due to her race in violation of the ELCRA.

107. Specifically, the Defendants failed to recall the Plaintiff to work in or around the first week of September 2020 and/or terminated the Plaintiff's employment on December 29, 2020 in significant part due to her race.

108. As a direct and proximate result, Plaintiff has sustained and will continue to sustain damages including, but not necessarily limited to, the following:

    (a)  Loss of wages and fringe benefits;

    (b)  Loss of pension and/or Social Security benefits;

    (c)  Severe mental anguish and distress;

    (d)  Embarrassment and humiliation;

    (e)  Mental anguish stemming from the outrage she experienced as a result of the actions against her;

    (f)  Fright, shock, and mortification;

    (g)  Pain and suffering;

    (h)  Damage to reputation;

(i) Punitive damages;

(j) Liquidated damages; and

(k)  Costs and attorney fees.

WHEREFORE, your Plaintiff respectfully requests this Honorable Court to enter a judgment in her favor against the Defendants, jointly and severally, awarding her an amount in excess of Seventy-Five Thousand ($75,000.00) Dollars to which she is entitled for compensatory, exemplary, liquidated, and/or punitive damages; granting her equitable relief as may be necessary; and awarding her costs, interest, and attorney fees so wrongfully incurred.

<u>COUNT V: DISABILITY DISCRIMINATION UNDER STATE LAW</u>

109.  Plaintiff incorporates paragraphs 1 through 108 above by reference.

110.  For all times material to this Amended Complaint, the Defendants were "employers" under The Persons with Disabilities Civil Rights Act ("PDCRA") under MCL 37.1201(b) as well as "persons" under the PDCRA.

111. By virtue of the impairments and/or conditions described in paragraphs 29, 30 and/or 31 above, the Plaintiff was a person who was actually and currently disabled for all times material to this Amended Complaint and was also a person with a disability under the PDCRA.

112. More specifically, Plaintiff had one or more physical impairments or conditions that substantially limited one or more of her major life activities and has had a history or record of such an impairment.  Further, Plaintiff has been regarded by and/or perceived by the Defendant as having such an impairment.

113. Plaintiff also has been and is a qualified individual with a disability under the PDCRA.  Plaintiff is an individual who, with reasonable accommodation, could perform the essential functions of her job without any undue hardship being caused to the Defendant.

114.  The Defendant violated the PDCRA by discriminating against the Plaintiff in the ways noted above.

115. Specifically, the Defendants took the adverse employment actions against the Plaintiff that are referred to in paragraph 79 above in significant part because (a) she has had a physical impairment that has substantially limited one or more of her major life activities, (b) she has had history or record of such an impairment, and/or (c) the Defendants regarded her and/or perceived her as having such an impairment, although their understanding and/or perception of the Plaintiff's impairments have not been entirely accurate.

22

116. As a direct and proximate result, Plaintiff has sustained and will continue to sustain damages including, but not necessarily limited to, the following:

        (a)  Loss of wages and fringe benefits;

        (b)  Loss of pension and/or Social Security benefits;

        (c)  Severe mental anguish and distress;

        (d)  Embarrassment and humiliation;

        (e)  Mental anguish stemming from the outrage she experienced as a result of the actions against her;

        (f)  Fright, shock, and mortification;

        (g)  Pain and suffering;

        (h)  Damage to reputation;

        (i) Punitive damages;

        (j) Liquidated damages; and

        (k)  Costs and attorney fees.

WHEREFORE, your Plaintiff respectfully requests this Honorable Court to enter a judgment in her favor against the Defendants, jointly and severally, awarding her an amount in excess of Seventy-Five Thousand ($75,000.00) Dollars to which she is entitled for compensatory, exemplary, liquidated, and/or punitive

damages; granting her equitable relief as may be necessary; and awarding her costs, interest, and attorney fees so wrongfully incurred.

COUNT VI:  RETALIATION IN VIOLATION OF STATE LAW -
VIOLATIONS OF ELCRA AND PDCRA

117.  Plaintiff incorporates paragraphs 1 through 116 above by reference.

118. Each Defendant was a "person" within the meaning of the ELCRA and the PDCRA.

119. The ELCRA prohibits one or more persons from (a) retaliating and/or discriminating against another person because the other person has opposed a violation of the ELCRA and (b) interfering with another person's exercise or enjoyment of any right granted by the ELCRA.  See MCL 37.2701(a) and (f).

120. Likewise, the PDCRA prohibits one or more persons from (a) retaliating and/or discriminating against another person because the other person has opposed a violation of the PDCRA and (b) interfering with another person's exercise or enjoyment of any right granted by the PDCRA.  See MCL 37.1602(a) and (f).

121. Plaintiff's protected email constituted protected opposition clause activity under both the ELCRA and the PDCRA as well as the exercise or enjoyment of a right under both statutes.

122. Further, Plaintiff's actions in requesting an FMLA leave, taking time off, and/or otherwise being accommodated with respect to her disabilities constituted the exercise or enjoyment of a right or rights under the PDCRA.

123. The Defendants violated the ELCRA and/or the PDCRA by taking the adverse employment actions against the Plaintiff that are referred to in paragraph 79 above in significant part because (a) she had engaged in the above protected activity and/or (b) in order to interfere with her exercise or enjoyment of rights granted by the ELCRA and/or the PDCRA.

124. As a direct and proximate result, Plaintiff has sustained and will continue to sustain damages including, but not necessarily limited to, the following:

    (a) Loss of wages and fringe benefits;

    (b) Loss of pension and/or Social Security benefits;

    (c) Severe mental anguish and distress;

    (d) Embarrassment and humiliation;

    (e) Mental anguish stemming from the outrage she experienced as a result of the actions against her;

    (f) Fright, shock, and mortification;

    (g) Pain and suffering;

25

(h)  Damage to reputation;

(i) Punitive damages;

(j) Liquidated damages; and

(k)  Costs and attorney fees.

WHEREFORE, your Plaintiff respectfully requests this Honorable Court to enter a judgment in her favor against the Defendants, jointly and severally, awarding her an amount in excess of Seventy-Five Thousand ($75,000.00) Dollars to which she is entitled for compensatory, exemplary, liquidated, and/or punitive damages; granting her equitable relief as may be necessary; and awarding her costs, interest, and attorney fees so wrongfully incurred.

COUNT VII:  VIOLATION OF TITLE VII –RACE DISCRIMINATION

125.  Plaintiff incorporates paragraphs 1 through 124 above by reference.

126. Each Defendant was an "employer" within the meaning of Title VII.

127. Plaintiff was discriminated against by the Defendants in the terms and conditions of her employment in significant part due to her race in violation of Title VII.

128. Specifically, the Defendants failed to recall the Plaintiff to work in or around the first week of September 2020 and/or terminated the Plaintiff's employment on December 29, 2020 in significant part due to her race.

129. As a direct and proximate result, Plaintiff has sustained and will continue to sustain damages including, but not necessarily limited to, the following:

    (a)  Loss of wages and fringe benefits;

    (b)  Loss of pension and/or Social Security benefits;

    (c)  Severe mental anguish and distress;

    (d)  Embarrassment and humiliation;

    (e)  Mental anguish stemming from the outrage she experienced as a result of the actions against her;

    (f)  Fright, shock, and mortification;

    (g)  Pain and suffering;

    (h)  Damage to reputation;

    (i) Punitive damages;

    (j) Liquidated damages; and

    (k)  Costs and attorney fees.

WHEREFORE, your Plaintiff respectfully requests this Honorable Court to enter a judgment in her favor against the Defendants, jointly and severally, awarding her an amount in excess of Seventy-Five Thousand ($75,000.00) Dollars to which she is entitled for compensatory, exemplary, liquidated, and/or punitive

damages; granting her equitable relief as may be necessary; and awarding her costs, interest, and attorney fees so wrongfully incurred.

COUNT VIII: DISABILITY DISCRIMINATION UNDER FEDERAL LAW

130.  Plaintiff incorporates paragraphs 1 through 129 above by reference.

131.  For all times material to this Amended Complaint, each Defendant was a "covered entity" pursuant to the Americans with Disabilities Act ("ADA") under 42 USC 12111(2) in that each Defendant was an "employer" under 42 USC 12111(5)(A).

132. By virtue of the impairments and/or conditions described in paragraphs 29, 30 and/or 31 above, the Plaintiff was a person who was actually and currently disabled for all times material to this Amended Complaint and was also a person with a disability under the ADA.

133. More specifically, Plaintiff had one or more physical impairments or conditions that substantially limited one or more of her major life activities and has had a history or record of such an impairment.  Further, Plaintiff has been regarded by and/or perceived by the Defendant as having such an impairment.

134. Plaintiff also has been and is a qualified individual with a disability under the ADA.  Plaintiff is an individual who, with reasonable accommodation,

28

could perform the essential functions of her job without any undue hardship being caused to the Defendant.

135. The Defendant violated the ADA by discriminating against the Plaintiff in the ways noted above.

136. Specifically, the Defendants took the adverse employment actions against the Plaintiff that are referred to in paragraph 79 above in significant part because (a) she has had a physical impairment that has substantially limited one or more of her major life activities, (b) she has had history or record of such an impairment, and/or (c) the Defendants regarded her and/or perceived her as having such an impairment, although their understanding and/or perception of the Plaintiff's impairments have not been entirely accurate.

137. As a direct and proximate result, Plaintiff has sustained and will continue to sustain damages including, but not necessarily limited to, the following:

> (a) Loss of wages and fringe benefits;
>
> (b) Loss of pension and/or Social Security benefits;
>
> (c) Severe mental anguish and distress;
>
> (d) Embarrassment and humiliation;
>
> (e) Mental anguish stemming from the outrage she experienced

as a result of the actions against her;

(f) Fright, shock, and mortification;

(g) Pain and suffering;

(h) Damage to reputation;

(i) Punitive damages;

(j) Liquidated damages; and

(k) Costs and attorney fees.

WHEREFORE, your Plaintiff respectfully requests this Honorable Court to enter a judgment in her favor against the Defendants, jointly and severally, awarding her an amount in excess of Seventy-Five Thousand ($75,000.00) Dollars to which she is entitled for compensatory, exemplary, liquidated, and/or punitive damages; granting her equitable relief as may be necessary; and awarding her costs, interest, and attorney fees so wrongfully incurred.

## COUNT IX: RETALIATION IN VIOLATION OF FEDERAL LAW - VIOLATIONS OF TITLE VII AND ADA

138. Plaintiff incorporates paragraphs 1 through 137 above by reference.

139. Each Defendant was a "person" within the meaning of Title VII and the ADA.

140. Title VII prohibits one or more persons from (a) retaliating and/or discriminating against another person because the other person has opposed a

30

violation of Title VII and (b) interfering with another person's exercise or enjoyment of any right granted by Title VII.

141. Likewise, the ADA prohibits one or more persons from (a) retaliating and/or discriminating against another person because the other person has opposed a violation of the ADA and (b) interfering with another person's exercise or enjoyment of any right granted by the ADA.

142. Plaintiff's protected email constituted protected opposition clause activity under both Title VII and the ADA as well as the exercise or enjoyment of a right under both statutes.

143. Further, Plaintiff's actions in requesting an FMLA leave, taking time off, and/or otherwise being accommodated with respect to her disabilities constituted the exercise or enjoyment of a right or rights under the ADA.

144. The Defendants violated Title VII and/or the ADA by taking the adverse employment actions against the Plaintiff that are referred to in paragraph 79 above in significant part because (a) she had engaged in the above protected activity and/or (b) in order to interfere with her exercise or enjoyment of rights granted by Title VII and/or the ADA.

31

145. As a direct and proximate result, Plaintiff has sustained and will continue to sustain damages including, but not necessarily limited to, the following:

(a)  Loss of wages and fringe benefits;

(b)  Loss of pension and/or Social Security benefits;

(c)  Severe mental anguish and distress;

(d)  Embarrassment and humiliation;

(e)  Mental anguish stemming from the outrage she experienced as a result of the actions against her;

(f)  Fright, shock, and mortification;

(g)  Pain and suffering;

(h)  Damage to reputation;

(i) Punitive damages;

(j) Liquidated damages; and

(k)  Costs and attorney fees.

WHEREFORE, your Plaintiff respectfully requests this Honorable Court to enter a judgment in her favor against the Defendants, jointly and severally, awarding her an amount in excess of Seventy-Five Thousand ($75,000.00) Dollars to which she is entitled for compensatory, exemplary, liquidated, and/or punitive

damages; granting her equitable relief as may be necessary; and awarding her costs, interest, and attorney fees so wrongfully incurred.

DEMAND FOR TRIAL BY JURY IS HEREBY REITERATED

DATED: March 24, 2023 /s/ GARY T. MIOTKE_____
GARY T. MIOTKE (P41813)
Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on March 24, 2023, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following: GREGORY M. MEIHN and DANIEL J. WOODCOCK, and I hereby certify that I have served by United States Postal Service the paper to the following non-ECF participants: HEALTHDRIVE CORPORATION, c/o CSC-Lawyers Incorporating Service (Company), 2900 West Road Ste. 500, East Lansing, MI 48823.

DATED: March 24, 2023 S/ GARY T. MIOTKE
GARY T. MIOTKE (P41813)
Attorney for Plaintiff

33